UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| TRAVIS LEE WEBSTER, | ) |  |
|---|---|---|
| Plaintiff | ) ) ) | |
| v. | ) ) | 1:14-cv-00213-JCN |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant | ) | |

# MEMORANDUM OF DECISION[1]

In this action, Plaintiff Travis Lee Webster seeks disability insurance benefits under Title II of the Social Security Act. Defendant Social Security Administration Acting Commissioner found that Plaintiff had severe impairments, but retained the functional capacity to perform substantial gainful activity through December 31, 2010, his date last insured. Defendant, therefore, denied Plaintiff's request for disability benefits.

As explained below, following a review of the record, and after consideration of the parties' written and oral arguments, the Court affirms the administrative decision.

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the October 25, 2012, decision of the Administrative Law Judge (ALJ).[2] The ALJ's decision (ECF No. 11-2) tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 404.1520.

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and enter a final order and judgment in this matter.

[2] Because the Appeals Council "found no reason" to review that decision (PageID # 32), the Acting Commissioner's final decision is the ALJ's decision.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of obesity and back and left leg pain secondary to lumbar degenerative disc disease, status post-microdiscectomy in March 2008. The ALJ assessed Plaintiff's residual functional capacity (RFC) and determined that Plaintiff retained the capacity for sedentary work as defined in 20 CFR § 404.1567(a), provided that he can sit for six hours and stand and walk for two hours in an eight-hour workday, and assuming normal breaks and the freedom to sit or stand at one-hour intervals throughout the day while remaining on task.[3]

The ALJ concluded that the RFC does not permit Plaintiff to return to his past relevant work as an electrician. With § 201.28 of the Medical-Vocational Guidelines (the "Grid") as a framework for decision-making at step 5, and relying on the testimony of a vocational expert to determine the degree to which Plaintiff's RFC eroded the sedentary work base, the ALJ found that Plaintiff could still engage in other substantial gainful employment. The ALJ specifically determined that Plaintiff could work as an order clerk, a ticket counter, and as a telephone quotation clerk. Concluding that the jobs existed in significant number in the national economy, the ALJ determined that Plaintiff was not under a disability in the relevant timeframe.

## DISCUSSION

Plaintiff argues (1) that the ALJ erred when he found that Plaintiff can sit for six hours in a workday; (2) that the testimony of the vocational expert did not constitute substantial evidence in support of the ALJ's step 5 finding related to the number of jobs in the economy; and (3) that the RFC finding should have included a limitation that Plaintiff would be absent from work on two days every month.

---

[3] The ALJ also assessed certain postural, manipulative, and environmental limitations.

### A. Standard of Review

The Court must affirm the administrative decision provided that the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. Analysis

#### 1. *Plaintiff's ability to sit*

Plaintiff argues that the record lacks substantial evidence that he can sit for six hours in a workday. Plaintiff notes that the ALJ gave little weight to the opinions of the state agency physicians. (Statement of Errors at 3-7 & n.1, ECF No. 17.) Plaintiff essentially argues that the weight of the evidence does not support the ALJ's conclusion.

Defendant maintains that the ALJ in fact accounted for the sit/stand issue when he determined that Plaintiff must be able to alternate at one-hour intervals. (Def.'s Response at 2-3, ECF No. 19.) Defendant further argues that at best, the evidence suggests that Plaintiff should avoid prolonged sitting, but does not support the conclusion that Plaintiff cannot work provided he has a sit/stand option at one-hour intervals. (*Id.* at 3.) Finally, while Defendant acknowledges that the record lacks expert opinion evidence that supports every aspect of the ALJ's findings, Defendant contends that the expert testimony is not required for each aspect. (*Id.* at 4-5.)

A review of the record reveals that the ALJ's assessment of Plaintiff's ability to sit is actually more favorable to Plaintiff's claim than the assessment of most of the medical experts. The state agency physicians who reviewed Plaintiff's medical records concluded that Plaintiff has greater capacity to stand and walk than the capacity found by the ALJ. Dr. Iver Nielson, M.D. (Exh. 1A) assessed a capacity for six hours of sitting and six hours of standing or walking. Dr. Richard Chamberlin, M.D. (Exh. 3A) agreed with this assessment. On the other hand, Plaintiff's treating source, Dr. Warren Shearer, M.D. (Exh. 9F), opined that Plaintiff can stand or walk for two hours on a soft surface, sit for less than six hours, and must periodically alternate sitting and standing to relieve pain or discomfort. Dr. Shearer, however, noted, "Per patient's history, I am not qualified to assess."

The ALJ afforded the opinion of Dr. Shearer little weight based in part on Dr. Shearer's observation that he was "not qualified to assess," and based on the fact that the opinion was generated as the result of treatment that commenced almost two years after the date on which Plaintiff was last insured. The ALJ found that the opinions of the state agency physicians were generally consistent with the treatment records, and thus he gave them "some weight." The ALJ nevertheless deviated from their assessments based on Plaintiff's consistent report that he needs to change position after an hour or two of sitting or standing. (R. 17.) The ALJ's decision also follows a review of the medical records, Plaintiff's activities of daily living, Plaintiff's pain medication usage, and Plaintiff's report of symptoms to his providers, as well as an assessment of Plaintiff's testimony at the hearing.

Plaintiff argues that the ALJ's sit/stand finding is illogical because the ALJ does not explain how Plaintiff can alternate between sitting and standing in one-hour intervals given that he can only stand for two hours in a workday. Viewed logically, the ALJ placed Plaintiff in the

4

sedentary work category and applied the sit/stand requirement to permit Plaintiff to adjust from a seated position as frequently as every hour. The Court does not construe the ALJ's decision to suggest that Plaintiff must be able to work in a job that permits him to stand for a continuous hour. As Defendant argued, a periodic adjustment, as frequently as hourly, together with normal breaks in the workday, would provide Plaintiff with the ability to address his need to avoid "prolonged" sitting. Defendant's characterization of the ALJ's determination is fair, and the determination is supported by substantial evidence on the record. Overall, therefore, the ALJ's findings regarding Plaintiff's ability to sit, and its impact on Plaintiff's work capacity are supported by substantial evidence on the record.

### 2. *The vocational expert's testimony*

Plaintiff argues that the ALJ's step 5 finding is not supported by substantial evidence on the record (1) because the vocational expert's testimony regarding the number of jobs in the economy is derived from composite survey data compiled by the Bureau of Labor Statistics, which data relate to broad occupational categories rather than the specific occupational titles about which the vocational expert testified, and (2) because the data represent the situation on the date of the hearing, whereas Plaintiff's date last insured was December 31, 2010. (Statement of Errors at 8-13.) Defendant contends that Plaintiff's challenges to the ALJ's decision are unpersuasive given the "sheer number of jobs [the vocational expert] identified." (Response at 8.)

The vocational expert identified three occupational titles that an individual with the limitations included in the ALJ's RFC assessment could perform:

> (1) Order Clerk (food and beverage), Dictionary of Occupational Titles ("DOT") # 209.567-014, of which there were 215,390 jobs nationally and 3,500 in Maine;
>
> (2) Ticket Counter, DOT # 219.587-010 (1,643,470 jobs nationally and 8,200 in Maine); and

(3) Telephone Quotation Clerk, DOT # 237.367-046 (973,800 jobs nationally and 3,640 in Maine).

(R. 59-60). At the administrative hearing, the vocational expert testified that her data regarding job numbers reflect the number of jobs within a broader grouping of occupations and not the numbers for the particular occupational titles in question. (R. 61-62.) More specifically, she testified that the number that she provided for order clerk actually includes 11 different occupational titles, not merely the occupation of order clerk. Similarly, the number provided for ticket counter actually applies to 27 different occupational titles in that grouping, and the telephone quotation clerk includes 14 different occupational titles. (R. 62.) The vocational expert stated that she could not identify the number of jobs available for the specified occupational titles (i.e., order clerk, ticket counter, and telephone quotation clerk). (*Id.*)

Defendant argues that the vocational expert's failure to provide numbers for the individual occupational titles does not require remand. Defendant notes that information regarding "precise" numbers might not exist and that the broader categories include nearly three million jobs in the national economy, which necessarily establishes the existence of a significant number of jobs for order clerks, ticket counters and telephone quotation clerks. (Response at 9-12.) In support of her argument, Defendant cites *Guiton v. Colvin*, 546 Fed. App'x 137, 142 (4th Cir. 2013) (unpublished) (rejecting a step 5 challenge based on the categorical nature of the job numbers provided by the vocational expert, where numbers specific to the individual occupational titles "simply do not exist" and where "far smaller numbers would still suffice to satisfy the Commissioner's burden").

The applicable regulation provides:

(a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether—

(1) Work exists in the immediate area in which you live;

(2) A specific job vacancy exists for you; or

(3) You would be hired if you applied for work.

(b) How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 404.1566(a), (b).

In *Vining v. Astrue*, 720 F. Supp. 2d 126, 128 (D. Me. 2010), this Court affirmed a recommended decision that one occupational title with jobs between 10,000 and 11,000 (nationally) was sufficient to satisfy the Commissioner's burden of proof at step 5.[4] Here, the vocational expert offered categorical numbers totaling more than 2.8 million jobs. According to the vocational expert, the figure encompassed 52 different occupational titles.[5] The issue is whether one can reasonably infer, as the ALJ did, that the three identified occupations (order clerk, ticket counter, and telephone quotation clerk), adjusted to account for the sit/stand option, exist in

---

[4] In *Clark v. Astrue*, No. 2:09-cv-00390-DBH, 2010 WL 2924237, at *2-3 (D. Me. Aug. 9, 2010), a vocational expert supplied categorical numbers that were found insufficient to serve as substantial evidence that the occupations of mail clerk, caller, and marker existed in significant number. The three occupational titles all belonged to the same occupational category, which category reflected roughly 440,000 total jobs, though the decision did not indicate how many other occupational titles were in the same category. A similar categorical number existed in *St. Pierre v. Astrue*, No. 1:10-cv-104-JAW, 2010 WL 5465635, at *2 (D. Me. Dec. 29, 2010), for a category that included the three occupations of final assembler, cleaner, and produce weigher, which number was found insufficient as being categorical rather than specific.

[5] Plaintiff's Statement of Errors suggests that, in fact, these categories include 32 rather than 52 occupational titles. (Statement of Errors at 9-11.)

significant numbers in the national economy. As noted by the Court in *Vining*, "[i]t is the responsibility of the Secretary to draw inferences from the record evidence." 720 F. Supp. at 128 (citing *Ortiz v. Sec'y of HHS*, 955 F.2d 765, 769 (1st Cir. 1991).

Given the overwhelming categorical number of jobs available, unless the sit/stand option reduces significantly the number of available jobs, the Court could not conclude that the ALJ's determination that a significant number of jobs exist in the three occupational titles to satisfy Defendant's burden at step 5 was unreasonable. Significantly, the vocational expert testified that based on her experience and observations in the field, she would not reduce the number of available jobs in the occupations because the occupations will accommodate the sit/stand requirement described by the ALJ in his hypothetical.[6] (PageID ## 91-94.) The significant number of jobs in the three categories and the vocational expert's testimony that the jobs in the three occupational titles (order clerk, ticket counter, and telephone quotation clerk) would accommodate the sit/stand option constitute substantial evidence in support of the ALJ's inferential finding that jobs exist in substantial number in the national economy.[7] The result is consistent with the Fourth Circuit's sound reasoning in *Guiton*: "[I]f we required a VE to produce job statistics specific to the DOT-

---

[6] In comparison, when asked about the effect of the sit/stand option on the number of jobs existing in the occupations of cashier, deli cutter/slicer, and marker, the expert testified: "It would likely reduce the number of jobs for the cashier position by about half. It would most likely eliminate deli cutter/slicer. And it would probably reduce marker positions by half." (PageID ## 89-90.) The fact that under a separate hypothetical, the vocational expert would reduce the number of available jobs based on the sit/stand option suggests that when appropriate, the vocational expert is prepared to reduce the number of available jobs as the result of Plaintiff's limitations.

[7] Plaintiff argues that the ticket counter occupation is a seasonal occupation in Maine and is relatively rare. (Statement of Errors at 12.) Assuming *arguendo* that is correct, as few as 500 jobs (or possibly fewer) is a significant number in the regional economy, *Ortiz-Ortiz v. Sec'y of HHS*, 961 F.2d 1565, 1992 WL 92700 (1st Cir. 1992), and this is only one of the three occupations relied on by the ALJ in support of his step 5 finding. Moreover, Plaintiff has not cited authority to support the proposition that the region is restricted exclusively to Maine, rather than New England, or for the proposition that an ability to perform substantial gainful seasonal work is immaterial to a disability determination, including when the ALJ finds other jobs in the regional economy that the claimant might perform in the off season. Plaintiff's further argument that the jobs data is unreliable because it was based (presumably) on 2012 rather than 2010 survey data is similarly unpersuasive given the magnitude of the number of total jobs existing in the occupational categories.

8

coded occupations a claimant can perform, it is unlikely that the Commissioner would *ever* succeed in satisfying her burden. This cannot be the result the regulations intend." 546 Fed. App'x at 142. (emphasis in original)

### 3. Work absences

The vocational expert testified that a limitation resulting in an absence from work for two days each month would preclude all jobs. (R. 64.) Plaintiff argues that "there is no question but that [he] would be unable to work on his 'really bad days,'" and that the ALJ ignored the issue. (Statement of Errors at 14.) The ALJ did not include this limitation in his RFC finding.

The ALJ's discussion of Plaintiff's RFC notes that Plaintiff first reported intense pain symptoms in 2011, after the date last insured; that the symptoms usually coincided with physical activity; and that Plaintiff continued to rely on over-the-counter pain medication. In the ALJ's view, such evidence did not reasonably suggest a more restrictive RFC within the insured period. Although the record might support different inferences about the severity of Plaintiff's pain symptoms on his worst days, the ALJ must resolve conflicting inferences. *Rodriguez*, 647 F.2d at 222. In short, the ALJ was not compelled by the record evidence to include in Plaintiff's RFC a limitation that Plaintiff is unable to work for two days each month.

### CONCLUSION

Based on the foregoing analysis, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of March, 2015.